1   Robert S. Green (State Bar No. 136183)
    Robert A. Jigarjian (State Bar No. 171107)
2   **GREEN & JIGARJIAN, LLP**
    235 Pine Street, 15th Floor
3   San Francisco, CA 94104
    Telephone: (415) 477-6700
4   Facsimile: (415) 477-6710

5   Evan J. Smith, Esq.
    **BRODSKY & SMITH, L.L.C.**
6   11 Bala Cynwyd, PA 19004
    Telephone: (610) 668-7987
7   Facsimile: (610) 660-0450

8   Attorneys for Plaintiffs

9

10              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12  LLOYD ZITOMER, Derivatively on              No.
    Behalf of Nominal Defendant HI/FN, INC.,
13                                              SHAREHOLDER DERIVATIVE
                   Plaintiff,                   COMPLAINT FOR VIOLATION OF
14                                              CAL. CORP. CODE 25402, BREACHES
            v.                                  OF FIDUCIARY DUTIES, AND WASTE
15                                              OF CORPORATE ASSETS
    RAYMOND J. FARNHAM, ROBERT W.
16  JOHNSON, DOUGLAS S. WHITING,
    ALBERT E. SISTO, TAHER ELGAMAL,
17  WILLIAM R. WALKER, STEPHEN A.
    FARNOW, and ROBERT A. MONSOUR,
18
                   Defendants,
19
            and                                 DEMAND FOR JURY TRIAL
20
    HI/FN, INC.,
21
                   Nominal Defendant.
22
                       **VERIFIED DERIVATIVE COMPLAINT**
23
            Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the
24
25  defendants named herein.

26

27

28                                                                                          -1-

    SHAREHOLDER DERIVATIVE COMPLAINT

Robert S. Green (State Bar No. 136183)
Robert A. Jigarjian (State Bar No. 171107)
**GREEN & JIGARJIAN, LLP**
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Evan J. Smith, Esq.
**BRODSKY & SMITH, L.L.C.**
11 Bala Cynwyd, PA 19004
Telephone: (610) 668-7987
Facsimile: (610) 660-0450

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD ZITOMER, Derivatively on Behalf of Nominal Defendant HI/FN, INC., <br><br> Plaintiff, <br><br> v. <br><br> RAYMOND J. FARNHAM, ROBERT W. JOHNSON, DOUGLAS S. WHITING, ALBERT E. SISTO, TAHER ELGAMAL, WILLIAM R. WALKER, STEPHEN A. FARNOW, and ROBERT A. MONSOUR, <br><br> Defendants, <br><br> and <br><br> HI/FN, INC., <br><br> Nominal Defendant. | No. _____ <br><br> SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF CAL. CORP. CODE 25402, BREACHES OF FIDUCIARY DUTIES, AND WASTE OF CORPORATE ASSETS <br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

### VERIFIED DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

SHAREHOLDER DERIVATIVE COMPLAINT                                                                    -1-

**NATURE OF THE ACTION**

1.      This is a shareholders' derivative action brought pursuant to F.R.C.P. 23.1 for the benefit of nominal defendant Hi/fn, Inc. ("Hi/fn" or the "Company") against certain members of its Board of Directors and certain executive officers seeking to remedy defendants' violations of California Corporations Code Section 25402, breaches of fiduciary duties and waste of corporate assets.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §§ 1331-1332.  The activities of the Defendants and their co-conspirators as described herein were within the flow of interstate commerce, had a substantial effect on interstate trade and commerce, and used the means and instrumentality of interstate commerce, including, but not limited to, telephone communications, mail and through the securities markets in the United States.

3.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332. Plaintiff Lloyd Zitomer is a citizen of the State of Pennsylvania.  Nominal defendant Hi/fn, Inc. is a Delaware corporation having its principal place of business in California.  In addition, Plaintiff is informed and believes that certain other defendants, including defendant Farnham, are citizens of California.

4.      This Court has jurisdiction over each Defendant named herein as each Defendant is a corporation with its principal place of business located in this district or is an individual who has sufficient minimum contacts with this district to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.      The amount in controversy requirement for diversity jurisdiction is satisfied for the following reasons:

SHAREHOLDER DERIVATIVE COMPLAINT                                                                    -2-

a.      If the Court orders and award of damages against any Defendant, as prayed for herein Hi/fn, Inc. and the Plaintiff will have an undivided claim for the full amount of such damages, the cost of which will exceed $75,000; and

b.      If the Court orders and award of reasonable attorneys fees to Plaintiff's attorneys such award will exceed 75,000.

6.      Venue is proper in this district under 28 U.S.C. §1391 (b).  Hi/fn, Inc. has its headquarters and principal place of business in this district, or maintains executive offices in this County, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to Hi/fn, occurred in this district, and defendants have received substantial compensation in this district by doing business here and engaging in numerous activities which had an effect in this district.

## PARTIES

7.      Plaintiff Lloyd Zitomer is, and was at all relevant times, a shareholder of nominal defendant Hi/fn.  Plaintiff is a citizen of the State of Pennsylvania.

8.      Nominal defendant Hi/fn is a Delaware corporation with its principal executive offices located at 750 University Avenue, Los Gatos, California 95032.  According to its public filings, Hi/fn is a flow classification and network security specialist company that designs, develops, and markets high-performance, multi-protocol packet processors for use in networking and storage equipment such as routers and switches.

9.      Defendant Douglas L. Whiting (Whiting) has served as a director of Hi/fn since November 1996 and serves as the Company's Chief Scientist.  Whiting served as the Company's Chief Technology Officer from 1996 to August 2000 and as Chairman of the Board of Directors of

SHAREHOLDER DERIVATIVE COMPLAINT                                    -3-

Hi/fn (the Board) from August 2000 to October 2001.  During FY1999, Whiting received a total of $202,684 in salary and cash bonuses and options to purchase 75,000 shares of Hi/fn common stock. On July 28, 1999, Whiting, while in possession of material adverse non-public information regarding the Company, sold 30,000 shares of Hi/fn common stock at $97.05 per share, reaping proceeds of $2,911,500.  Whiting had never sold Hi/fn stock prior to July 28, 1999.

10.     Defendant Robert W. Johnson (Johnson) has served as a director of Hi/fn since December 1998.  On August 5, 1999, Johnson, while in possession of material adverse non-public information regarding the Company, sold 10,000 shares of Hi/fn common stock at $100.83 per share, reaping proceeds of $1,008,300.  Johnson had never sold Hi/fn stock prior to August 5, 1999.

11.     Defendant William R. Walker (Walker) served as Hi/fn's Vice President of Finance and Chief Financial Officer at all times relevant hereto.  On August 6, 1999, Walker, while in possession of material adverse non-public information regarding the Company, sold 15,000 shares of Hi/fn common stock at $112.62 per share, reaping proceeds of $1,689,300. Walker had never sold Hi/fn stock prior to August 6, 1999.

12.     Defendant Stephen A. Farnow (Farnow) served as Hi/fn's Vice President of Operations at all times relevant hereto.  On July 29, 1999, Farnow, while in possession of material adverse non-public information regarding the Company, sold 50,000 shares of Hi/fn common stock at $94.86 per share, reaping proceeds of $4,743,000. Farnow had never sold Hi/fn stock prior to July 29, 1999.

13.     Defendant Robert A. Monsour (Monsour) served as Hi/fn's Vice President of Business Development at all times relevant hereto.  On August 11, 1999, Monsour, while in possession of material adverse non-public information regarding the Company, sold 10,000 shares of

Hi/fn common stock at $114.88 per share, reaping proceeds of $1,148,800. Monsour had never sold Hi/fn stock prior to August 11, 1999.

14.     Collectively, the defendants identified in paragraphs 7-11 will be referred to herein as the Selling Defendants.

15.     Defendant Raymond J. Farnham (Farnham) has served as a director of Hi/fn since October 1998. Farnham served as Chairman of the Board and Chief Executive Officer of Hi/fn from 1998 to August 2000. During FY1999, Farnham received a total of $337,222 in salary and cash bonuses and options to purchase 375,000 shares of Hi/fn common stock. Farnham is a director of in Silicon Corp., where defendant Sisto also serves as a director.

16.     Defendant Albert E. Sisto (Sisto) has served as a director of Hi/fn since December 1998. Sisto serves as President, Chief Executive Officer, and a director of Phoenix Technology, where defendant Elgamal also serves as a director. Sisto serves as a director of in Silicon Corp., where defendant Farnham also serves as a director.

17.     Defendant Taher Elgamal (Elgamal) has served as a director of Hi/fn since December 1998. Elgamal serves as a director of Phoenix Technology, where defendant Sisto serves as President and CEO.

18.     Collectively, the defendants identified in paragraphs 7-11 and 13-15 will be referred to as the Individual Defendants. The Individual Defendants, through their positions as directors and/or officers of the Company and their receipt of reports, attendance at meetings, and access to all of the Company's books, records and other proprietary information, had responsibility for and therefore were in possession of material non-public information concerning the Company and its operations, finances and business prospects. This material, non-public information included, but was not limited to, the Company's financial condition and growth prospects.

19.   Collectively, defendants Farnham, Whiting, Johnson, Sisto, and Elgamal will be referred to herein as the Director Defendants.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20.   By reason of their positions as officers, directors, and/or fiduciaries of Hi/fn and because of their ability to control the business and corporate affairs of Hi/fn, the Individual Defendants owed Hi/fn and its shareholders fiduciary obligations of trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage Hi/fn in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Hi/fn and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Hi/fn and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, services, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

21.   The Individual Defendants, because of their positions of control and authority as directors and/or officers of Hi/fn, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Hi/fn, each of the Individual Defendants had access to adverse non-public information regarding the financial condition, accounting practices, operations, and future business prospects of

SHAREHOLDER DERIVATIVE COMPLAINT                                                    -6-

Hi/fn.

22.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Hi/fn, and was at all times acting within the course and scope of such agency.

23.     To discharge their duties, the officers and directors of Hi/fn were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Hi/fn were required to, among other things:

   a.     ensure that the affairs of Hi/fn were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

   b.     exercise good faith in supervising the preparation and filing of all audits, reports, and other financial information required by law, including periodic financial statements and reports filed with the Securities and Exchange Commission (ASEC), and in examining and evaluating such audits, reports, and other information concerning the financial affairs of the Company;

   c.     ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public; and

   d.     refrain from acting upon material inside corporate information to benefit themselves.

24.     As a result of their responsibility for, and access to, material non-public information regarding the Company's financial condition, the Individual Defendants knew or had reason to know that the market had been misled by the Company's public disclosures as to the Company's financial condition and prospects.  The Individual Defendants caused the Company to conceal from the investment community, including the Company's public stockholders, the

SHAREHOLDER DERIVATIVE COMPLAINT

Company's true financial condition and prospects, which allowed the Selling Defendants to reap

insider trading profits through concealment.

26.     As alleged in detail below, from July 28 to August 11, 1999, when the Selling

Defendants had material non-public adverse information regarding the Company's financial

condition and prospects, the Selling Defendants breached their fiduciary duties of loyalty and good

faith by using material non-public information to sell 115,000 shares of Hi/fn common stock at

artificially inflated prices, thereby reaping $11.5 million in illegal insider trading proceeds for their

personal gain.

26.     The Individual Defendants were responsible for authorizing, or permitting the

authorization of, or failing to monitor, the practices which resulted in the Selling Defendants'

misappropriation of confidential corporate information for their own gain.  The Individual

Defendants breached their duties of loyalty and good faith by allowing the Selling Defendants to

place their own personal interests above the Company's and by failing to prevent the Company and

its officers and directors from committing acts which would, and did, injure the Company.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

27.     In committing the wrongful acts alleged herein, the Individual Defendants have

pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and

conspired with one another in furtherance of their common plan or design.  In addition to the

wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further

aided and abetted and/or assisted each other in breach of their respective duties as alleged herein.

28.     During all times relevant hereto, the Individual Defendants collectively and

individually initiated a course of conduct which was designed to and did: (i) maintain the Individual

Defendants' executive and directorial positions at Hi/fn and the profits, power and prestige which the

SHAREHOLDER DERIVATIVE COMPLAINT                                                    -8-

Individual Defendants enjoyed as a result of these positions; (ii) deceive the investing public, including shareholders of Hi/fn, regarding the Individual Defendants' management of Hi/fn's operations, financial health and stability, and future business prospects; and (iii) artificially inflate the market price of Hi/fn common stock and allow the Selling Defendants to sell their shares of Hi/fn at inflated prices. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

29.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct commencing in July 1999 and continuing through October 1999, during which time the Individual Defendants caused the Company to make inaccurate statements regarding Hi/fn's financial performance and future business prospects, while at the same time allowing the Selling Defendants to reap $11.5 million in proceeds from their stock sales.

30.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty and waste of corporate assets; to conceal adverse information concerning the Company's operations, financial condition, and future business prospects; and to artificially inflate the price of Hi/fn common stock so they could: (i) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained thereby; and (ii) allow the Selling Defendants to reap substantial personal profits from the sale of Hi/fn common stock.

31.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to make inaccurate statements regarding the Company's financial performance and prospects, which had the effect of artificially inflating the price of Hi/fn common stock. Each of the Individual Defendants was a direct, necessary, and

SHAREHOLDER DERIVATIVE COMPLAINT

-9-

1   substantial participant in the conspiracy, common enterprise, and/or common course of conduct

2   complained of herein.

3       32.    Each of the Individual Defendants aided and abetted and rendered substantial

4   assistance in the wrongs complained of herein.  In taking such actions to substantially assist the

5   commission of the wrongdoing complained of herein, each Individual Defendant acted with

6   knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

7   wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

8

9

10                              **FACTUAL ALLEGATIONS**

11          **HI/FN Disseminates Materially Misleading and Inaccurate Information**
            **as the Selling Defendants Trade on Inside Information**

12

13      33.    During the relevant period, 80% of Hi/fn's revenues came from the Company's

14  two largest customers, Quantum Corporation (Quantum) and Ascend Communications, Inc.

15  (Ascend) (which was acquired by Lucent Technologies, Inc. in June 1999).  In late July and early

16  August 1999, when the Individual Defendants knew that Quantum and Ascend were drastically

17  cutting back on orders of Hi/fn products, the Individual Defendants caused the Company to represent

18

19  to shareholders and the market that the Company's business was strong and would not be affected by

20  a slowdown in orders.  These materially misleading and inaccurate statements caused the price of

21  Hi/fn common stock to be inflated, and the Selling Defendants, while in possession of the foregoing

22

23  material adverse non-public information, took advantage of the inflated prices by selling 115,000

24  shares of Hi/fn common stock for illegal proceeds of $11.5 million.

25      34.    On July 26, 1999, Hi/fn issued a press release announcing its financial results for

26  its third quarter of FY1999.  The press release stated:

27

28
    SHAREHOLDER DERIVATIVE COMPLAINT                                              -10-

Revenues for the third quarter of 1999 were $12.5 million, up 150% percent from the $5.0 million in revenue reported in the third quarter of 1998 and up 44% sequentially from the $8.7 million in revenue reported in the second quarter ended March 31, 1999. Revenues for the nine months ended June 30, 1999 were $27.3 million, an increase of 66% compared to $16.5 million reported for the nine months ended June 30, 1998. Net income for the third quarter of 1999 was $3.4 million or $0.35 per diluted share versus net income of $291 thousand or $0.04 per diluted share for the third quarter of 1998 and versus net income of $1.7 million and $0.21 per diluted share for the second quarter of 1999. Net income for the nine months ended June 30, 1999 was $5.6 million or $0.65 per diluted share compared to net income of $1.9 million or $0.27 per diluted share for the first nine months of fiscal 1998. "We are pleased with another successful quarter. Both the networking and storage areas of our business experienced strong sequential growth," said Raymond J. Farnham, Chairman and CEO. "For the first time our networking business represented more than half of the Company's revenue during the quarter."

35.    On July 26, 1999, following the release of its third quarter results,

defendants Farnham and Walker held a conference call with analysts and investors during which they

stated:

> (a)    Hi/fn's favorable financial results were the result of a better mix of hardware components, strong software shipments, and economies of scale all of which would lead to more favorable results going forward;
>
> (b)    Hi/fn's core competency is in a patent protected data compression technology that is the de facto industry standard, which would provide steady earnings growth going forward;
>
> (c)    Hi/fn's Abook-to-bill@ ratio (of new orders received to orders filled during the quarter) was Acomfortably@ above parity, which provided Hi/fn with good visibility going forward;
>
> (d)    Concerns about a slowdown in orders from Quantum, the Company's largest customer, were overblown because any slowdown from Quantum would be temporary and would be offset by additional sales to other customers;
>
> (e)    Hi/fn management had worked closely with Quantum to adjust its inventory and were adjusting the Company's lead times on Quantum orders, so the Company had excellent visibility with regard to Quantum's future orders;
>
> (f)    Hi/fn had strong momentum with Ascend, its second largest customer, which would lead to strong growth in FY2000; and

SHAREHOLDER DERIVATIVE COMPLAINT                                                           -11-

   (g)  Hi/fn was on track to report earnings per share of $0.37 in the first quarter of FY2000.

36.  The Company's July 26, 1999 announcements had an immediate material effect on the price of Hi/fn common stock, which soared nearly 20%, from $78.63 to $94.25, on July 27, 2000.

37.  Analysts also reacted positively to Hi/fn's July 26, 1999 announcements.  For example, in a July 27, 1999 research note, Pacific Growth Equities analyst Sandy Harrison wrote:

**HIFN reports blowout numbers again.** HIFN reported EPS of $0.35, which was $0.13 or 59% better than our $0.22 estimate (the Street was looking for $0.23). Total revenues grew 44% sequentially to $12.5 million and were 28% greater than our $9.8 million estimate driven by better than expected revenue across all products segments. Gross margin grew sequentially 140 basis points to 75.7% from 74.3% and was 470 basis points higher than our estimate of 71.0% due to a richer mix of integrated Hardware components, stronger Software shipments and economies of scale associated with the higher revenues. . . .

We are raising our FY:99 and FY:00 revenue estimates to $41.3 million from $34.8 million and $69.0 million from $46.0 million, respectively, to reflect the stronger than expected revenue ramp in Networking products which includes both the Company's Hardware and Software products. . . .  We are raising our FY:99 and FY:00 EPS estimates to $1.06 from $0.75, and $1.59 from $1.00, respectively, to account for higher operating margin going forward.

        . . .

**Reiterate Strong Buy rating with a 12-month price target of $100.** We believe the stock could reach $95-100 over the next 12 months, based on a multiple of 45x our preliminary CY2000 EPS estimate of $1.90-$2.10, which assumes a 50% growth rate over CY:99. We believe the Company is experiencing strong demand for its products driven by the build-out of the Internet infrastructure and the increasing demand for merchant VPN solutions by the ISPs (Internet Service Providers).

38.  In a July 27, 1999 research note, Thomas Weisel Partners analyst Elias Moosa wrote:

Six months ago the Company anticipated that its network products could double during the year.  The Company has already surpassed that milestone with networking product revenues up 77% sequentially and up 350% over the same quarter a year ago.  Growth in this market is primarily driven by sales into Lucent's Ascend. . . .

Even as Hi/fn's network business continues to ramp steeply, the Company's storage business, which is dominated by compression sales to Quantum, is also growing. . . .
Revenue outlook has been exceptionally strong with Hi/fn over the past couple of quarters and forward visibility appears to continue at a strong level. . . .   Our new EPS expectations are $1.00 for F99 up from $0.74. . . .

With the Company beating expectations so convincingly, we believe that Hi/fn stock could see a surge as investors embrace the Company's unexpected level of acceleration in its core focus area of networking security.  Concerns over the slow-down in sales to Quantum over the coming quarter are likely to be offset by the apparently temporary nature of the issue and the particularly strong tone in the rest of Hi/fn's business.  The explosive nature of the growth in the networking business and the coming preparation for new product cycles extends the potential for growth in F2000 as well. . . .

39.     The statements set forth in paragraphs 32-33 were materially misleading and inaccurate when made because each of the Individual Defendants knew the following material non-public information:

(a)     Hi/fn's two largest customers, Quantum and Ascend, who together accounted for approximately 80% of the Company's revenues, were significantly cutting back their orders for Hi/fn products for FY2000; and

(b)     the slowdown in orders from Quantum and Ascend would not remotely be offset by sales to other customers, making it extremely unlikely that Hi/fn would meet its revenue and earnings projections for FY2000.

40.     Beginning on July 28, 1999, just two days after the Company's July 26, 1999 announcements caused the price of Hi/fn stock to rise dramatically, and continuing until August 11, 1999, the Selling Defendants, while in possession of material adverse non-public information regarding the Company's financial condition and prospects, sold a total of 115,000 shares of Hi/fn common stock at an average sale price of approximately $100, reaping proceeds of $11.5 million, as follows:

///

///

///

SHAREHOLDER DERIVATIVE COMPLAINT                                          -13-

| Name | Date | # Shares | Price | Proceeds |
|------|------|----------|-------|----------|
| Douglas Whiting | 7/28/99 | 30,000 | $97.05 | $2,911,500 |
| Robert Johnson | 8/5/99 | 10,000 | $100.83 | $1,008,300 |
| William Walker | 8/6/99 | 15,000 | $112.62 | $1,689,300 |
| Stephen Farnow | 7/29/99 | 50,000 | $94.86 | $4,743,000 |
| Robert Monsour | 8/11/99 | 10,000 | $114.88 | $1,148,800 |

41.     The stock sales set forth in the preceding paragraph were not part of any normal or regular pattern or practice of such sales by the Selling Defendants, but rather were unusual in timing and amount.  None of the Selling Defendants had ever sold Hi/fn common stock prior to the sales set forth in the preceding paragraph.

42.     At the time of the stock sales set forth in paragraph 38, each of the Individual Defendants knew the material adverse non-public information set forth in paragraph 37.

43.     From August 12 to October 6, 1999, Hi/fn continued to trade well above $100 per share, reaching a high of $145.19 per share on September 8, 1999.

### The Truth Is Revealed

44.     On October 7, 1999, Hi/fn issued a press release which stated:

Hi/fn expects operating results for the fourth quarter ended September 30, 1999, to exceed analyst expectations. Fourth quarter and year-end results will be announced on or about October 25, 1999. Hi/fn also announced that two of its major customers have told the company that they will reduce demand for Hi/fn products from previously ordered amounts in the first quarter ending December 31, 1999. As a result, Hi/fn expects revenues for the first quarter to be in the range of $10 million. "The unusual first quarter development is that two of our major customers, in the widely separate fields of networking and tape storage equipment, have unexpectedly and simultaneously reduced their volume requirements," says Raymond J. Farnham, Hi/fn Chairman and CEO. "The reductions are primarily due to inventory adjustments. The virtual private network (VPN) market, the primary end market served by our networking customers, is moving ahead with all major equipment networking manufacturers participating. However, as with any rapidly growing market segment, short-term adjustments at individual providers will occur."

SHAREHOLDER DERIVATIVE COMPLAINT

-14-

45.     The Company's October 7, 1999 announcement had an immediate material effect on the price of Hi/fn common stock, which plummeted 64%, from $104.75 to $37.75, on October 7 and 8, 1999.

46.     Upon revelation of the true adverse conditions affecting the Company, several Hi/fn shareholders commenced securities fraud class actions against the Company and its senior executive officers (naming as defendants some of the Individual Defendants in the instant action), alleging that the Company's public dissemination was materially false and misleading in violation of federal securities laws.

47.     On or about March 17, 2000, the plaintiffs in the consolidated securities fraud class action filed a consolidated amended complaint, which the defendants subsequently moved to dismiss.  On or about August 9, 2000, the court in the consolidated securities fraud class action granted in part and denied in part the defendants' motion to dismiss.  The parties to the consolidated securities fraud class action are currently engaged in discovery, and a trial is scheduled to be held in January 2003.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

48.     Plaintiff brings this action derivatively in the right and for the benefit of Hi/fn to redress injuries suffered and to be suffered by Hi/fn as a result of the statutory violations, breaches of fiduciary duty, waste of corporate assets, as well as the aiding and abetting thereof, by the Individual Defendants.  This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

49.     Plaintiff will adequately and fairly represent the interests of Hi/fn and its shareholders in enforcing and prosecuting its rights.

50.     Plaintiff is an owner of Hi/fn common stock and was an owner of Hi/fn common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

51.     As a result of the facts set forth herein, and additionally pursuant to California Corporations Code §800(b)(2), plaintiff has not made any demand on the Hi/fn Board of Directors to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

     A.     There are currently seven members on the Hi/fn Board: the five Director Defendants (Farnham, Whiting, Johnson, Sisto, and Elgamal); Chairman of the Board and Chief Executive Officer Christopher G. Kenber (AKenber@); and director David A. Norman.  Each of the Director Defendants participated in, approved or recklessly disregarded the wrongs complained of herein, which could not have been an exercise of good faith business judgment;

     B.     All of the Director Defendants continue to serve as directors of Hi/fn and comprise a majority of the Board.  Thus, in order to bring this action for breaching their fiduciary duties, the directors would be required to sue themselves and/or their fellow directors who are their friends and with whom they have entangling alliances and interlocking business relationships, interests, and dependencies, which they would not do.  These entangling relationships include:

          (i)     defendants Farnham and Sisto's serving together as members of the board of directors of in Silicon Corp.; and

          (ii)     defendant Sisto's serving as President and CEO of Phoenix Technologies, where defendant Elgamal serves as a board member;

     C.     Defendants Whiting and Johnson are directly interested in the insider trading transactions at issue, having collectively sold a total of 40,000 shares of Hi/fn common stock while in possession of material adverse non-public information regarding the Company's financial condition and prospects and reaping a total of nearly $4 million in illicit proceeds.  Accordingly, defendants Whiting and Johnson are legally incapable of considering a demand to commence and vigorously prosecute this action;

SHAREHOLDER DERIVATIVE COMPLAINT     -16-

D.     There is a substantial likelihood that defendant Farnham, who served as Hi/fn's Chairman and CEO at the time of the wrongdoing alleged herein, will be held personally liable for damages the Company has sustained and will sustain as a result of his breaches of fiduciary duties; and

E.     The principal professional occupation of Hi/fn's current Chairman and CEO Kenber is his employment with Hi/fn, pursuant to which he has received and will continue to receive substantial monetary compensation and other benefits, including hundreds of thousands of dollars in salary and cash bonuses and hundreds of thousands of options to purchase Hi/fn common stock. Accordingly, Kenber is legally incapable of considering a demand to commence and vigorously prosecute this action against the Director Defendants, who comprise a majority of the Board.

## COUNT I

### AGAINST THE SELLING DEFENDANTS
### FOR VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25402

52.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

53.     At the time of the stock sales set forth herein, each of the Selling Defendants knew the material adverse non-public information described in paragraph 37 above.

54.     The information described in paragraph 37 was proprietary non-public information concerning the Company's financial condition and prospects. It was a proprietary asset belonging to the Company, which the Selling Defendants used for their own benefit when they sold Hi/fn common stock at prices higher than they could have obtained had the market been aware, as they were, of the true state of the Company's finances and future prospects.

55.     In selling shares of Hi/fn common stock while in possession of material adverse non-public information, the Selling Defendants violated California Corporations Code Section 25402, and are therefore liable to Hi/fn pursuant to California Corporations Code Section 25502.5(a) for

SHAREHOLDER DERIVATIVE COMPLAINT                                                    -17-

damages in an amount equal to three (3) times the difference between the prices at which the Selling

Defendants sold their Hi/fn shares and the market value at which such shares  would have sold had

the material non-public adverse information known to the Selling Defendants been publicly

disseminated.

**COUNT II**

**AGAINST THE SELLING DEFENDANTS**
**FOR BREACH OF FIDUCIARY DUTIES FOR INSIDER SELLING AND**
**MISAPPROPRIATION OF INFORMATION**

56.    Plaintiff incorporates by reference all preceding and subsequent

paragraphs as if fully set forth herein.

57.    At the time of the stock sales set forth herein, each of the Selling Defendants

knew the material adverse non-public information described in paragraph 37 above.

58.    The information described in paragraph 37 was proprietary non-public

information concerning the Company's financial condition and prospects.  It was a proprietary asset

belonging to the Company, which the Selling Defendants used for their own benefit when they sold

Hi/fn common stock at prices higher than they could have obtained had the market been aware, as

they were, of the true state of the Company's finances and future prospects.

59.    At the time of their stock sales, the Selling Defendants knew that the Company's

financial condition and prospects were materially overstated, which when reported would cause the

price of the Company's common stock to dramatically decrease.  The Selling Defendants' sales of

Hi/fn common stock while in possession and control of this material adverse non-public information

was a breach of their fiduciary duties of loyalty and good faith.

60.    Since the use of the Company's proprietary information for their own gain

constitutes a breach of the Selling Defendants' fiduciary duties, the Company is entitled to the

SHAREHOLDER DERIVATIVE COMPLAINT                                              -18-

imposition of a constructive trust on any profits the Selling Defendants obtained thereby.

61. Plaintiff has no adequate remedy at law.

### COUNT III

### AGAINST ALL INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTIES FOR DISSEMINATION
### OF MISLEADING AND INACCURATE INFORMATION

62. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

63. As alleged in detail herein, each of the Individual Defendants had a duty to ensure that Hi/fn disseminated accurate information to the market.

64. Each of the Individual Defendants violated the fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to the market materially misleading and inaccurate information through public statements, as alleged herein.

65. Each of the Individual Defendants failed to disclose the material adverse information described herein so that the Company's stock price would trade at artificially inflated prices and the Selling Defendants could sell their personal holdings of Hi/fn common stock at inflated prices.

66. Each of the Individual Defendants failed to correct the Company's publicly reported financial results and guidance, and aided and abetted in the Selling Defendants' use of material adverse non-public information to sell their personal holdings of Hi/fn common stock at inflated prices. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

67. As a direct and proximate result of the Individual Defendants' foregoing breaches

SHAREHOLDER DERIVATIVE COMPLAINT                                           -19-

of fiduciary duties, Hi/fn has suffered damages, including, but not limited to, damages associated

with the Selling Defendants' stock sales and loss of credibility in the market.

68.    Plaintiff has no adequate remedy at law.

## COUNT IV

### AGAINST ALL INDIVIDUAL DEFENDANTS FOR WASTE OF CORPORATE ASSETS

69.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

70.    During the term of the wrongdoing alleged herein, the Individual Defendants occupied positions within the Company that made them privy to confidential, proprietary information concerning the Company's financial condition and future business prospects, as described herein.  The foregoing information was a proprietary asset belonging to the Company, which the Selling Defendants, aided and abetted by the remaining Individual Defendants, used for their own benefit and to the detriment of the Company and its shareholders.

71.    The Company received no consideration in exchange for the Selling Defendants' use of the Company's confidential, proprietary information concerning its financial condition and future business prospects.

72.    Each of the Individual Defendants individually and/or jointly committed one or more of the acts or omissions to act as alleged herein and aided and abetted in the Selling Defendants' use, without consideration to the Company, of material adverse non-public information to sell their personal holdings of Hi/fn common stock at inflated prices for their own benefit and to the detriment of the Company and its shareholders, which constituted a waste of corporate assets.

73.    As a direct and proximate result of the Individual Defendants' waste of corporate

SHAREHOLDER DERIVATIVE COMPLAINT                                                         -20-

1   assets as alleged herein, Hi/fn has sustained damages, including, but not limited to, damages

2   associated with the Selling Defendants' stock sales and loss of credibility in the market.

3       74.    Plaintiff has no adequate remedy at law.

4       WHEREFORE, plaintiff demands judgment as follows:

5

6   A.    Determining and awarding Hi/fn treble damages pursuant to California Corporations Code § 25502.5(a) for the Selling Defendants' violations of  California Corporations Code § 25402;

7

8   B.    Imposition of a constructive trust in favor of the Company for the amount of profits each of the Selling Defendants received from their sales of Hi/fn common stock alleged herein;

9

10

11  C.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and waste of corporate assets;

12

13  D.    Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

14

15  E.    Granting such other and further relief as the Court deems just and proper.

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

1

JURY DEMAND

2

Plaintiff demands a trial by jury.

3

DATED: March 27 2002

4

5
Respectfully submitted,

6
**GREEN & JIGARJIAN, L.L.P.**

7

8
By:

9
Robert A. Jigarjian
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415 477-6700)

10

11

12
Evan J. Smith, Esq.
**BRODSKY & SMITH, L.L.C.**
11 Bala Avenue, Suite 39
Bala Cynwyd, PA 19004
Telephone: (610) 668-7987
Facsimile:  (610) 660-0450

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

-22-

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3

named parties, there is no such interest to report.

4

5

By _____

6

Robert A. Jigarjian
Attorney of Record for Plaintiff

7

Lloyd Zitomer

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

-23-

## VERIFICATION

I, Lloyd Zitomer, hereby verify under penalty of perjury that I have reviewed the Complaint and authorized its filing and that the allegations in the Complaint are true and correct the best of my knowledge, information and belief.

DATED: March 12, 2002

LLOYD ZITOMER